Filed 4/3/14  In re J.T. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re J.T., a Person Coming Under the Juvenile Court Law. | B251042 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK97934) |
| Plaintiff and Respondent, | |
| v. | |
| E. T., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Akemi Arakaki, Judge.  Affirmed.

Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

_____

E. T. (father) appeals from juvenile court orders asserting dependency jurisdiction over his infant son, J.T., and removing J.T. from father's custody. Father contends the jurisdictional order was not supported by substantial evidence. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

In March 2013, the juvenile court sustained a dependency petition regarding the two children of father and mother, Isabel D.J. The court sustained allegations that the two children, Jesus and Victoria, were at substantial risk of harm due to the parents' verbal altercations and father's alcohol abuse. Reports from the Los Angeles County Department of Children and Family Services (DCFS) indicated that in January 2013, then six-year-old Jesus told an anonymous reporting party that when father got mad, he hit mother in the stomach. Mother was pregnant with J.T. at the time. Mother and father denied that father hit anyone in the house, but mother admitted father often came home angry and yelled. Mother recalled an incident in which father tried to hit Jesus, but mother put herself in between them and threatened to call the police. Mother reported father drank to excess often, and his drinking was a problem. Father denied coming home from work angry and denied being an alcoholic. When interviewed by a social worker, Jesus denied that father hit him, but made comments such as: "I don't know how he's hit me because he doesn't hit me anymore."

School personnel reported Jesus was having significant difficulties in school. In his first year of school he made himself vomit almost every morning. He had repeated kindergarten in the 2012-2013 academic year, but was still at a pre-school level. He also routinely had accidents at school and "leaked" in his pants. Mother and father attributed the accidents to nervousness. They refused to sign a medical release to allow school personnel to speak with his doctor.

In February 2013, mother reported father had kicked her out of their home. He had grown angry after she spent all day with her mother. Mother indicated father drank every day until he was drunk and was aggressive when intoxicated. When he came home from work he yelled at her and the children. Since father drank every day, she was afraid for him to have unmonitored contact with the children. She said father could not control

2

his anger and "could hit the children if they do something to upset him." Father continued to deny having any problems with alcohol or domestic violence. He did not understand why mother said he had problems with anger or with alcohol. He also denied that Jesus was having trouble in school.

After sustaining the dependency petition, the juvenile court placed the children with mother. The court ordered father to participate in programs, including an alcohol program with weekly testing, an anger management program, and individual counseling. The court also ordered mother to participate in programs, including individual counseling to address case issues, such as domestic violence and father's alcohol use, and parenting programs.

In May 2013, mother gave birth to J.T. DCFS filed a petition asserting J.T. was at risk of harm due to mother and father's verbal altercations and father's history of alcohol abuse. Mother and father had not been in contact since February 2013. In a jurisdiction and disposition report, DCFS reported father had enrolled in programs and attended them regularly. His case manager said he was an active participant and was making good progress. He had perfect attendance. Father had also submitted to random and on-demand alcohol testing. He had no positive results, but missed four tests in April and May. Mother had not yet been able to participate in any counseling or parenting classes due to her pregnancy, childbirth, and caring for infant J.T.

At the July 2013 jurisdiction and disposition hearing, mother submitted the jurisdictional determination to the court. Father contended the petition should be dismissed because DCFS had not established J.T. was at substantial risk of harm. The juvenile court commended father on his progress, but concluded by a preponderance of the evidence that J.T. was a person described by Welfare and Institutions Code section 300, subdivision (j).[1] The court also found by clear and convincing evidence that removal from father's custody was necessary. J.T. was to remain with mother.

---

[1] All further statutory references are to the Welfare and Institutions Code.

Father timely appealed.  In September 2013, while this appeal was pending, the juvenile court issued a home of parents order; however, the parents were ordered to remain living in separate residences.

## DISCUSSION

**I.      Substantial Evidence Supported the Court's Jurisdictional Findings**

Father contends there was insufficient evidence of substantial risk of harm to J.T. We disagree.

"We review the court's jurisdictional and dispositional findings for substantial evidence.  [Citations.]  Evidence is ' "[s]ubstantial" ' if it is ' " 'reasonable, credible, and of solid value.' " '  [Citation.]  We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence.  Instead, we draw all reasonable inferences in support of the findings, view the record in favor of the juvenile court's order and affirm the order even if other evidence supports a contrary finding.  [Citations.]  The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the findings or order."  (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161-1162.)  " ' " 'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.'  [Citation.]"  [Citation.]'  [Citation.]" (*In re V.M.* (2010) 191 Cal.App.4th 245, 252 (*V.M.*).)

Under section 300, subdivision (j), the juvenile court may assert dependency jurisdiction over a child if: "The child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child."

Here, it is undisputed that J.T.'s siblings were abused or neglected as defined in section 300, subdivision (b).  This was based on father's alcohol abuse and violent altercations between mother and father.  There was evidence that father had either hit or

4

threatened to hit Jesus; he drank every day to the point of inebriation; he was aggressive and violent when drunk, or he passed out and was incapable of caring for the children. Jesus told an anonymous reporter that father hit mother in the stomach when she was pregnant with J.T. Father admitted he had been drinking alcohol since he was 10 years old. Before mother's departure and the removal of his children, father mostly denied that his drinking was a problem, or that his altercations with mother might be detrimental to the children.

As the juvenile court acknowledged, father had appeared to make substantial improvements since dependency jurisdiction was asserted over Jesus and Victoria, but that was only four months before the jurisdiction hearing regarding J.T. Father now admitted he had verbal altercations with mother, but denied they were ever in front of the children. He also admitted he had been in the habit of drinking every day, but denied that he was ever aggressive when he drank. He was fully compliant with court-ordered programs, but they were still in the early stages. He had also missed several random or on-demand alcohol tests. J.T. was not yet three months old at the time of the jurisdiction hearing.

Despite father's progress, the juvenile court could reasonably determine father's past conduct, which formed the basis of dependency jurisdiction over Jesus and Victoria, similarly placed J.T. at substantial risk of serious physical harm, within the meaning of section 300, subdivision (b). Moreover, mother had not yet been able to participate in services to address the underlying domestic violence and parenting issues. There was some suggestion in the record that mother might consider reuniting with father, illustrated by her request for a family visit so she could observe how father would act with all four family members. Given the fluidity of the situation, mother's inability to participate in services, father's prolonged alcohol abuse and the newness of his sobriety, the long history of violent altercations between the parents, the parents' failure to recognize the seriousness of Jesus's incontinence at school, and J.T.'s complete helplessness as an infant, the evidence was sufficient to support a finding of jurisdiction under section 300, subdivision (j). Even if the probability of harm to J.T. was somewhat lower than it might

5

have been four or five months earlier, the magnitude of potential harm was significant since, as an infant, he would be completely dependent on father's care. (*In re I.J.* (2013) 56 Cal.4th 766, 778.) We find no error in the trial court ruling.

## II. Father Concedes the Removal Order is Moot

While this appeal was pending, the juvenile court returned J.T. to the home of both parents, under DCFS supervision. We granted respondent's request that we take judicial notice of the order. Father concurs with respondent that his appeal of the court's removal order is moot. (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1489-1490.) Thus, we do not consider the merits of that order.

### DISPOSITION

The juvenile court's jurisdictional order is affirmed.

BIGELOW, P.J.

We concur:

RUBIN, J.

GRIMES, J.